Good morning. My name is Brian Neary. My address, 21 Main Street in Hackensack. Today, I represent the defendant appellant, Leona Beldini. If I may, Judge, despite the thinking of that, I want more than three minutes of rebuttal. I would respectfully request the opportunity to have three minutes of rebuttal. That's granted. Thank you. May I start? Please. Thank you. This case deals with the issue of a 666 federal bribery conspiracy. It deals with whether or not the jury charge, as given by the district court, not only satisfies the requirement, which I believe is clear in this circuit, of a necessity of a quid pro quo, an exchange element, but in addition, in a situation where there are campaign contributions, that beyond the simple requirement of a quid pro quo, there is the necessity of a McCormick type challenge, which deals with a specific agreement for an explicit agreement to come to a specific result. Of course, McCormick dealt with section 1961, right? 1951. Sorry. Your adversary points out that the difference, there's a significant difference between section 666, which is, of course, an issue here, and section 1951, and that is an intent element, the corruptly language in 666. How do you deal with that? I think that the government's brief actually concedes there is a quid pro quo requirement for a bribery. And if you look at, if you look at, go back to SICA back in 1991, you go back to Antica, which was in the late 90s, the suggestion is there's a requirement of quid pro quo. What my esteemed colleague suggests, I think, that Judge Linares's reference to, and I think the phrase was to, official action, is in and of itself adequate to cover that so-called exchange or in return to, or to use Judge Linares's word when he correctly gave the McCormick charge, a swap. He said there's a requirement of a swap. I would suggest that based on what was Judge Linares's charge on the 666, that to simply say, make reference to official action. Well, it wasn't just a reference to official action. It wasn't the language that Baldini must have been intended, at least in part, to be influenced or rewarded for her official action or assistance. If you say, I'm going to, and it's our intent here, for this influence to be, influence to be given for official action, as a matter just of English, isn't that clearly an exchange? Well, I'm not so sure, Judge Druden, that the word simple for satisfies the requirement of in exchange for or in return to. Now, I agree that What else would it mean in that context? The language, and I'm quoting it, intended at least in part to be influenced or rewarded for her official action or assistance. What would that mean other than in exchange for? I would respectfully suggest, in thinking about what the court in Jenkins, a Fifth Circuit case, talked about, which Judge Linares, as I believe his thinking evolved as to the adequacy of that jury charge, he relied twice in his written opinion granting bail pending appeal on Jenkins, where Jenkins examined that language of corrupt intent to influence or reward. There's a second problem with the term of influence or reward, because influence is Jenkins or Jennings? Jennings, oh, I'm sorry, Jennings. The Fifth Circuit case that Judge Linares himself referred to in July of 2010 when he granted bail pending appeal. I would suggest that Jennings says that that language in and of itself is not sufficient to encompass the need for a notion of quid pro quo or exchange. And I think if you look at this circuit, if you look at Chico, if you look at Kemp out of this court, that Kemp suggests that there's a necessity for that exchange-type language. I thought, now, I'm sorry, with Jennings, just let me ask, I thought that Jennings said it's not enough to make a passing reference to official action or influence, but it didn't say it's not enough to say you're being influenced for the official, you're being rewarded for the official act, right? I mean, when I read Jennings, and maybe I just read it wrong, you can correct me, there was a, the court there was making the point that you can't just reference official action generally. You've got to talk about something happening for that, in exchange for that. I think Jennings was talking about that one could remedy the failure to use exchange or return by an adequate series of examples, and that the court in Jennings, I think the jury got charged, there were four different attempts to define corrupt intent, and despite four different tries, the circuit basically said you didn't make it, you didn't set that up. Curiously enough, as we discuss now whether or not there's a necessity of specific for exchange language, I think that, and as I said, I believe my esteemed brother may have, may have conceded that, in a McCormick context, in a McCormick context, it's doubly required, because you are specifically now talking, I'm using the S word right there, you are talking about an explicit agreement to do a specific act. Otherwise, the lessons of McCormick dealing with the notion and the special class of property called... Here's where I need you to help me. In looking at the colloquy, you, Mr. Kalkagny, and the court have, I'm troubled in how I get to the point where you've preserved this issue. You know, I've known you for a long time, your exactitude with your nomenclature is well known. I read that many, many times, and it's hard for me in looking at it to see how it's preserved. The conversation, it would appear, among the persons I've alluded to, is clearly on the McCormick issue. At the appointed time, you make a passing reference to counts 4 and 5, and so take me through this, how I'm to look at, not me, obviously, colleagues as well, we're to look at all of this and say, yes, it's preserved. Well, I will concede I wasn't talismanic in what I said with regard to its preservation, but I did take a look that there was a 20-page discussion about the merits of McCormick vis-a-vis this case. As it relates to 1501, though. 1501. At no point in the discussion, correct me if I'm wrong, is there a specific reference to 666 other than your mention on, one second, I believe it's A1657 of counts 4 and 5. Right. And in conjunction with that, there's no mention of McCormick. I'm sorry? As far as I could read that, there's no mention of McCormick at all with respect to counts 4 and 5. My reference was, and I can, for that 20 pages or 25 pages, argue that this was a campaign contribution case. Now, Brother Calcagney took it a little bit of a different view when he had, he said, Mr. Neary can't sprinkle through, can't sprinkle through the charge his McCormick requirement. Well, Judge Linares didn't understand you to have been making that McCormick assertion because in the post-judgment, he specifically said, as your opponents point out, in two places that that was not objected to, right? I mean, his view of the record and his understanding of the record was that McCormick, that specific request for a McCormick-style charge with regard to 666 was not something that you had asserted or objected to based on what he ruled. I would respectfully disagree. And under this notion, that once the issue of campaign contributions, which I used the word primacy for, which I used the word focus for, were clearly within this case. Excuse me. Could you just give, we want to record your words. I'm sorry. I'm sorry. I'm not that tall. That clearly the issue was put before this Court. And as I said, I believe that Judge Linares' view of it evolved because we were really talking about a new area of law. The model charge under 666 not only doesn't talk about quid pro quo but doesn't even make any reference to McCormick. And that if you look at the decision on the day of the charge conference, his opinion where he called the issue a meaty one, his word, and that in this opinion in July of 2010 granting bail pending appeal, where he himself now starts talking about Jenkins, that he realizes that this was an important part of the case. So I respectfully suggest that I preserved it. But if you Let's assume for a moment that we disagree. We move to plain error. If plain error is the standard of review, how should this case be viewed? Same result. Same result because you have a substantial right and a miscarriage with regard to it. I go back to Jenkins again. Jennings. Jennings. Jennings. I'm sorry. The other guy was the pitcher for the Cub. And he was good. He was good. The Jennings, Jennings was similar. They didn't even breathe a word with regard to Jennings. And they found that, as we talked about a couple of minutes ago, that corrupt intent wasn't even sufficient, that the explanation. The difference from while Jennings was not reversed was, in fact, that Jennings' defense wasn't, there wasn't a specific agreement or quid pro quo. He said, I didn't get the money. Clearly, through the argument, I argued that there was no specific agreement with which to do this. Jennings seemed to say, if you allude to the concept of quid pro quo, you're going to be OK. You disagree with that? I do. I do. Do you disagree with Siegelman? Because Siegelman just now says, it doesn't have to be express. You don't have to have an express agreement. If you have one that's sufficiently understood from the record, that's going to be explicit enough. Siegelman was a case under a 666 campaign contribution, the proverbial $500,000, that the court specifically gave a McCormick-type charge. The argument was the adequacy of the McCormick charge. And what turned in Siegelman was that Siegelman's lawyers wanted the word express as opposed to the word explicit. We used explicit in this case, which is satisfactory. Because if you just use express, you have the proverbial wink and nod. You can't have a wink, you can't have a nod. So I believe that Siegelman actually is maybe the first case in the nation that specifically says, 666, campaign contribution, you have to give a McCormick-type challenge. There's no case in this district that says that, because that hasn't come. Although we've done it in a 2001, we did it in a, I'll get this number wrong, but we did it in a honest services briar context, I think 1341. We gave a McCormick-type charge, but Siegelman specifically gives it. We can quibble about express and explicit. Explicit would have been enough, because explicit was enough with regard to the other counts in the indictment, in which Ms. Baldini was found not guilty. So if the government argues, well, where's the prejudice? Well, nothing better than the verdict that we had when the jury was specifically told as to the same campaign, Judge, I apologize. I'm- You are, go ahead, finish, but you gotta be behind the microphone. But when the jury is specifically told about the same campaign contribution, and Judge Linares gives the instruction with regard, gives the instruction with regard to a McCormick-type express agreement of- So your position is that words, the word explicit or express has to be used? Explicit, yes. I don't have, I don't have to get to express, but I have to get to explicit. Then how could Evans have come out the way it did? Because the Evans charge didn't use the word explicit, and it didn't use the word express, and it came just a year after McCormick. And the Supreme Court said, good enough. I, I think, and I'll, I'll be honest, I gotta think about it. When I sit down in rebuttal, I'm gonna think about that one. I am, I, I think that Evans dealt with 2001, and I think that Evans did not water down McCormick. It just gave a different explanation. I'm suggesting that in this situation, in Judge Linares specifically giving what was otherwise a correct McCormick charge, and acquittals happen on those campaign contributions. How then the same conduct be then under what I'll say a much watered down, or I'll say a non-existent, a non-existent standard, allow that to stand. If the government is allowed to use 666 to cover campaign contributions, it would never have to charge campaign contributions under, under the Hobbs Act, under the Travel Act, under 2001. It would simply rely on this jury charge under 666, because they could subvert McCormick on a campaign contribution. I apologize. Yeah, well. It's a bad habit I've got with you over the years, just talking on. That's true, you know, and in this courtroom, you know, we used to be able to go on and on, but new job. Okay. However, I will exercise my discretion in this way. I want to take you off of this topic for a moment, and go back to plain error. If, if we are looking at this as plain error, there's no Supreme Court precedent. No third circuit precedent. There's a split in circuits. How, how do we satisfy plain error in that scenario? Historically, McCormick was a plain error case. They never thought about it before they got to the, up to the appellate courts. So there's a precedent there for that kind of, what I use the word, evolving thinking. The evolution thus far would, would, would appear to be that there are more, more courts such as ours that are thinking about this in a particular way that isn't synonymous with the way you were looking at it. I, I, I, I ask the question, is there a court otherwise in the nation that has found that under a McCormick, that a campaign contribution under 666, under 666, that there isn't a McCormick, there isn't a requirement for that specific higher burden of proof with regard to it. Because otherwise we're really talking about, you know, political considerations. Judge Linares was, was, was, was, was adequate, or better than adequate. He had it right when he talked about it under 1951. We think about political contributions and campaign contributions differently. Citizens United tells us we still think that way. So to ignore the specific special class of property that a campaign contribution is, and to suggest, and I say this respectfully, Judge, that, that, that simple corrupt intent is sufficient to cover that. Or that we don't specifically talk about specific, you know, an, an explicit, I'll, I'll stay with explicit, explicit agreement to do a specific action. I'm giving you money, not in anticipation of a favorable result, as, as is, as, as some of the cases, but in a, but not in a, but a complete expectation, a specific act, because I've given you, I'm giving you $500,000 because I want to sit on that CON board. As opposed to a political contribution for a candidate. And as I said, I, I, if I may just finish on this point. If corrupt. Briefly. I apologize. Briefly. I, I, I don't want to cut you off in the middle of a sentence, but we do have to move on. Okay. On the issue of, of, of corrupt intent to influence or reward. Well, if a jury is allowed to decide a campaign contribution under that standard, every political contribution is an effort to influence. That's why you give to a candidate. But it's not a crime unless under McCormick, there's a specific agreement for a specific result. Okay. Thank you. Thank you, Judge. Mr. Sanders, your your adversary cited the Chico case where we may have implied that there's a quid pro quo requirement. He also said the government would concede that a quid pro quo, there is a quid pro quo requirement. Is that so? Let me clarify what we argue because this is a big problem in the case law and that is the nomenclature. We, when we use the term quid pro quo for 666, we agree that there's an exchange requirement, but we argue that that exchange requirement is in the statute and it's in the jury instructions. And if it's not even in the pattern jury's instructions, which Mr. Neary's brief complains about, it is certainly in the modification we made to it by adding four per official action or assistance. So we agree that there's an exchange requirement, but there isn't the rigid McCormick type quid pro quo requirement in a general 666 case. And every circuit has held that. So you're so the instructions, your argument is the instructions here do not need the words in exchange. They're unnecessary here. Right. I mean, in exchange for simply duplicates what's already in this instruction, because the corrupt intent to accept something of value with any influence in an official act is by definition a quid pro quo. Ford says that, the second circuit's decision. Dahman says that, and in fact, sometime in Groves says that, because Justice Scalia, when describing the difference between the gratuity offense and the bribery offense, says bribery requires an agreement in close to statute. And he says, in other words, it requires a specific intent to receive something in exchange for it. But what he's saying there, the practical effect of a finding on the elements of bribery is a finding of an exchange. Well, here's, I'm sorry. Go ahead, go ahead. You just said a rigid McCormick requirement. What does McCormick mean after Evans? Evans seemed to say pretty specifically that the instruction that was at issue there, which didn't use explicit, didn't use express, was sufficient to satisfy the quid pro quo requirement. Is there a meaningful legal difference between what Judge Linares instructed here and what the Supreme Court approved in Evans? No, and in fact, what Judge Linares did here is better. Let me give you an excellent point. Evans said he's going to be guilty of receiving campaign contributions as a bribe if you know, the only instance in the case, with your knowledge, that the person giving you that payment expects an official act in return. You don't even have to say, I promise to do it. If the person goes to you, I'm giving you this money because I want you to vote on this legislation, I want you to make that point, and you accept it. Evans says that's sufficient, even under McCormick. So that's just your knowledge of the donor's intent. In this case, we go better than that, because not only do we know what the donor's intent here is, he makes no bones about it on this case, what he wants and why he's doing it. But we have specific intent by the defendant to do something and it's painful. We have a finding by the jury because bribery, this quid pro quo bribery, it's an intent and that was deficiency in instruction. Well, this is a significant thing, at least in my mind. I want to make sure I understand you right, because earlier you said you don't have to have a rigid McCormick thing. Is it the government's position? Are you acknowledging now, in response to my question, that maybe there isn't a difference between what McCormick requires and what occurred here? Because if you see a difference between what McCormick requires and what happened here, I'd be interested to know that. Well, I think the way this case was indicted, we tried. We're talking only about a payment in exchange for an identified official act. I mean, even Whitfield says cases sustained a bribery conviction involving campaign contributions under the scheme of benefits theory. And if that's true, then as you point out, under Evans, where mere knowledge of the donor's intent is sufficient, as long as you know that that payment's being made to you in exchange for, in return for, an official act, it's the concreteness of the bargaining that matters. And here, the jury charge, the way this case is described, needs no doubt about the concreteness of the bargaining. Can I jump back to the preservation issue? Yeah, that's what I was going to actually ask you about. We probably shouldn't have gone so far into this. But, I mean, obviously, if you're right, they've got a pretty high hill to climb. Why don't you explain why plain error would apply? Because misdemeanory conceded at the Rule 33 argument. And I should, shame on me for not highlighting this in my brief, but I'd like to direct the court to pages A, 1923, and 24 of the record. When misdemeanory was confronted by the District Court, why didn't you make that argument at the charge conference? So just, I'm sorry, I can't turn this quickly. 1923 and 24. And those are minister pages, so there's a quadrant of the court transferred from each page, and I'm starting at the bottom of page 39. Because we'll all need our magnifying glasses to see that. Yeah, that was small. Page 39 to the top of page 42. And when Judge Linaras asked why didn't you raise a specific objection, if misdemeanory is not being preserved, his reaction would have been, well, I did raise it. But that's not his reaction. He comes up with three excuses, essentially. He says, number one, it's not in the model charge, and Judge Linaras said, well, neither is the former in the model charge for the hotbed. Then he says, well, it was the government's duty to volunteer it. And the third one was, well, because he had objected to sprinkling, his efforts sprinkled in the form of language throughout the hotbed charge, we probably would have objected to the adaptive word on the specific charge. But that is a concession by the misdemeanor, yet he didn't properly preserve it. So that alone makes Judge Linaras' finding that this is unproductive, certainly not clearly erroneous, and can't be supported by the record. So I think there's a permanent scenario there. And that's a specific question Judge Linaras asked. There's no tentative holding on this information. No circuit has, for instance, in court, and no circuit has formally held that it extends, that McNair, in fact, was transferring in the other direction. So if you have a finding of that incorruptly, that's sufficient to eliminate the misdemeanor practice. And that would include campaign contributions. How do you respond to your opponent's argument that if all you have to do is say act correctly, if that's really all you had to say in the jury instruction, you didn't have to say anything more than that, like Judge Linaras did here in talking about for official action, then you just would never have anybody charging under the Hobbs Act anymore. The government would always run to 666 because they could get by with a more generalized charge and an easier standard. Well, I'll accept the premise that at least the charge is modified. That's what's necessary. My response is that the... Well, that's your premise. I'm only reflecting your premise back at you, right? I'm happy to run with it. The false premise, the legal premise, that runs through the defendant's argument is that because the former said, you can avoid a First Amendment problem by having this, what do they call it, rigid quid pro quo, that you have a First Amendment problem if you don't have one. And the court has never held that. In other words, there are other ways to avoid criminalizing legitimate campaign contributions than just to have this, you know, with this promise or whatever it is. You might mention the former case. And we have, roughly, with specific intent for official action, it negates any possibility that she accepted these campaign contributions knowing or believing that Solomon Wright had a mere expectation of favorable official action. It's just, it's logically impossible. Do you read Siegelman the way they do to be a case endorsing the idea that McCormick is now part of 666? I don't. Siegelman said we don't have to reach that issue because the charge, which the defense specifically requested in that case over the government's objection, they got the district court to give a specific quid pro quo instruction. And the court in Siegelman on remand said we don't have to reach the issue. I agree with Dick that regarding the honest services bribery charges in that case with regard to campaign contributions. But there, there's a notice issue, right? As Dick said, well, in order to provide fair notice, we need to adopt a more rigid request. There's no notice problem. And there's never been one claimed here with respect to what the bribery statute requires. People know what bribery is. They know it's something or it's something else. And as the 5th Circuit said in Littfield, as 7th Circuit said in Giles, and as the 9th Circuit said in Kinshaw County, as long as the instructor's not carried, if there's something and you get something, you get covered with the quid pro quo requirement. Can I briefly touch on the third problem and put down in support of the instruction. The defense keeps huffing on the acquittals. But under the law, the acquittals are irrelevant. They mean nothing. Howell says that in the 7th Circuit and Lakehead. And it's very clear in his objection to identical arguments that, you know, if somebody's very good at it on one hand and has gotten this instruction, I know this was in fact mentioned in that case, then he would have also gotten good at it on the 7th Circuit but very importantly, you can't use those to put up a reference in the 7th Circuit. There's meaninglessness in the analysis because you're only speculating about what the jury found in Kinshaw County on one basis. The court has no response to that. All right. Thank you, counsel. Mr. Murray, could you please respond to your adversary's point on A1923-2013? It's with the same honesty that I spoke to this court that I didn't give a talismanic objection with regard to it. And in my discussion with Judge Linares, that while... Can you give us the full context of the discussion as it appears at 1923? Is that the motion for... That's the motion for a new trial. Did you have it with you? I did. I thought you might have looked at it. I actually did. That was the motion in May in front of Judge Linares. It's volume eight. I'm sorry? It's volume eight. I'm just referencing that point of view. Oh, actually, you got it? Yeah. Well, just to refresh your memory, that's all. Right. I would suggest, I respectfully suggest, that the discussion, as I said, as honest as I've tried to be to this court, I was speaking to Judge Linares. But the issue is not, did I hit it on the head? Because if you look at Russell in this district, this circuit, it talks about the notification of the potential problem. And dare say... I'm going to interrupt you, and I beg your pardon for it. I want you to look at 1923-24. Got it. If you haven't already. I have it. And give us your representation as to whether it is so that at that point in the record, in front of Judge Linares on the motion for a new trial, when he put the question to you about having failed to object, you conceded that you didn't object. Now, if it's equivocal, then obviously we'll all review it, and we'll come to whatever conclusions that we do. But if it's unequivocal, and you agree with the government, I think we'd all like to know that now. I would respectfully disagree with my colleague. I think that my answer to Judge Linares was my effort to explain how I, maybe not so articulately at the jury conference, but expressed that there was a McCormick campaign issue that flowed throughout this. I am attempting as best I can, as the court knows, to be as honest as I can. But I go back to Russell, that Judge Linares was under a notice with regard to that of a potential problem. I think the issue, when I take issue with my colleague's position that jury verdicts don't matter, the properly charged jury on the 1950, on the Hobbs Act, on the campaign contributions, got it right and found Ms. Beldini not guilty. With regard to the very same conduct in what would have to be a watered down, non-McCormick issue with regard to campaign contribution, she gets found guilty. Remember, in the colloquy with regard to the jury charge, Brother Cal Cagney kept talking about Sprinkle and focused on the real estate commissions. That was the big enchilada. That was the one that they really spoke about. That did not require a McCormick charge because it was not the need for that specific charge. She gets found not guilty of that one also. So I would respectfully suggest, whether it's with having preserved her or even on a plain error standard, that there's a substantial question, a miscarriage of justice, as Judge Linares recognized in Jennings, in Jennings, even when counsel doesn't raise it, that, in fact, that it should have been given. I think to do otherwise allows the government to use 666 in every campaign case and ignore the admonition and the law of McCormick, what we recognized in 1951 in Hobbs Act, 201 in the Travel Act, as well as honest services fraud. We required it in every other type of campaign contribution case. Why not this? Isn't that the whole point of 666, that the language itself, when you look at it, doesn't lead to the inference that it is as all the others are and that the exchange, you can't look at it and say, look at the language itself and say, aha, quid pro quo. That's the lesson of Chico and Antico. 666 has a very different purpose. It deals with the class of people under federal funds. That's a point that I made in the brief. I would simply rely on what I argued there. But those cases have talked about that a simple literal reading of 666 would make anything something of value. And Chico and Antico suggest that we should take a more limited view of that. And this is the perfect example because of campaign contribution, which in fact, a campaign contribution is that specific type of property that is so unique. And I'll use Judge Linares' words because in his decision in the bail pending appeal, he said a unique set of circumstances. The unique part of this, which was in 666, in a campaign situation. Better wrap it up, Mr. Neary. Judge, I finished. Thank you very much for your patience with me. Thank you. Thank you, Counsel, for excellent arguments, excellent briefs. I'll take the case under advisement. My apologies. I didn't introduce my esteemed colleague, David Fassett, who of course was on the brief. Okay. Thank you.